IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL HOLLINS,

      **Plaintiff,**

v.                                         Civil Action No. 1:09cv75
                                           (Judge Keeley)

**JAMES N. CROSS, Warden; C. MILTON,
Inmate Systems Manager; C. PULICE, Unit
Manager; MR, DAVIS, Case Manager; and
CONSOLIDATED DESIGNATIONS AND
SENTENCE COMPUTATION CENTER
in Grand Prairie, Texas;**

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action on June 5, 2009. After the plaintiff was granted permission to proceed as a pauper, and he paid the assessed initial partial filing fee, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not warranted. Accordingly, the Clerk was directed to issue summonses for the defendants and to forward the appropriate paperwork to the United States Marshal Service for service of process.

After service of process was executed, the defendants sought permission to file a consolidated response and an extension of time to do so. Permission was granted on October 7, 2009, and the defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on November 9, 2009.

Because the plaintiff is proceeding without counsel in this case, the Court issued a Roseboro

Notice on December 3, 2009. Despite such notice, the plaintiff has not filed a response to the defendants' motion.

This case is before the undersigned for a Report and Recommendation pursuant to LR PL P 72.01.

## II. Contentions of the Parties

**A. The Complaint**

In the complaint, the plaintiff contends that the Bureau of Prisons ("BOP") "processes designations, transfers, and inmate sentence computations from its Consolidated Designation and Sentence Computation Center ("CDSCC")." Complaint at 4. The plaintiff further contends that the CDSCC controls, maintains and possesses all of his records, including his federal Judgment and Commitment Order ("J&C") and his Presentence Investigation Report ("PSR"). The plaintiff asserts that because this case involves the BOP's control, maintenance and possession of his criminal records, this case arises pursuant to the Privacy Act.[1] Specifically, the plaintiff asserts that the BOP failed to maintain accurate records under the Privacy Act because it:

(1) illegally altered his PSR by falsely categorizing his criminal conviction as a Class A felony;

(2) used the erroneous PSR to make decisions adverse to the petitioner concerning custody and security classifications, job and housing assignments, participation in general institutional activities and prerelease and halfway house preparations.

Additionally, the plaintiff asserts that the BOP has:

(3) unlawfully seized, confiscated or destroyed his legal documents, materials and other items

---

[1] 5 U.S.C. § 552a.

from his property during transfer;

(4) refused him access to his Central File;

(5) refused to delivery his mail in a timely manner, which prohibits his ability to respond to and meet court deadlines;

(6) refused him access to law library facilities and

(7) unlawfully prevented him from completing the administrative remedy process.

As relief for these alleged violations of his rights, the plaintiff seeks $150,000 in compensatory damages from each defendant, correction of his records and his immediate release.

**B.     The Defendants' Motion**

In their motion, the defendants seek the dismissal of the complaint, or judgment in their favor, for the following reasons:

(1) the plaintiff's privacy act claims are not appropriate against the individual defendants;

(2) the plaintiff fails to state a claim for relief under the Privacy Act;

(3) defendant Cross is not an appropriate defendant in this case;

(4) the plaintiff has failed to exhaust his administrative remedies;

(5) the defendants did not violate the plaintiff's First Amendment right to access the courts;

(6) the defendants are entitled to qualified immunity and

(7) any claims against the defendants in their official capacities are barred by the doctrine of sovereign immunity.

### III.     Standards of Review

**A.     Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,

it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id*. (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in

Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id*.

**B.  Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id*. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is

a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### IV. Analysis

**A. The Plaintiff's Privacy Act Claims**

Pursuant to the Privacy Act, 5 U.S.C. § 552a(e), each agency that maintains a system of records shall --

> (5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

An individual may request the amendment of any record pertaining to him that the individual believes to be inaccurate, irrelevant, untimely, or incomplete. § 552a(d)(2). If the agency has failed to maintain an individual's records in accordance with § 552(a) or determines that an individual's record should not be amended, the individual may bring a civil case *against the agency* within the district court. § 552a(g)(1). By its terms, the only proper defendant in a claim brought pursuant to the Privacy Act is the agency which maintains the records in question. Accordingly, the plaintiff in this case has failed to name an appropriate defendant for his Privacy Act claims and those claims should be dismissed against the named individual defendants. See Williams v. Department of Veteran Affairs, 879 F.Supp. 578, 581 n.5 (E.D.Va. 1995).

Nonetheless, even it the Court was to substitute the proper agency defendant, the plaintiff's Privacy Act claim still fails on the merits. The plaintiff alleges the following Privacy Act violations:

(1) that the BOP illegally altered his PSR by falsely categorizing his criminal conviction as

a Class A felony; and

(2) the BOP used his erroneous PSR to make decisions adverse to the petitioner concerning custody and security classifications, job and housing assignments, participation in general institutional activities and prerelease and halfway house preparations.

In order to be entitled to collect damages for an agency's failure to maintain accurate records, the plaintiff must show that "(1) there was [an] adverse determination; (2) the agency failed to maintain plaintiffs' records with the degree of accuracy necessary to assure fairness in the determination; (3) the agency's failure was the proximate cause of the adverse determination; and (4) the agency acted intentionally and willfully in its failure." Armstrong v. United States Bureau of Prisons, 976 F.Supp. 17, 22 (D.C.Cir. 1997) (citing 5 U.S.C. § 552a(d), (e)(5), (g)(1)(c), (g)(1)(d) and (g)(4)).

In a case filed in this Court before the Honorable Robert E. Maxwell on March 11, 2009, the plaintiff alleged that his sentence was improperly calculated because the BOP illegally "changed" his offense class from a Class C to a Class A felony. See Hollins v. Cross, 2:09cv33 (N.D.W.Va. Nov. 25, 2009), Dckt. No. 39 (Report and Recommendation of the Magistrate Judge) at 2-3. In that case, Magistrate Judge David J. Joel determined:

> to the extent that the petitioner is alleging that the BOP changed his sentence classification from a Class C felony to a Class A felony after his sentencing and outside the purview of the court, the same is clearly without merit. The Judgment in the defendant's underlying criminal case indeed does indicate that he was found guilty of a Class C felony. (Doc. 1, p.2). However, that is obviously a typographical error. In its Statement of Reasons, the sentencing court clearly stated that the [petitioner] had been charged with violation of 18 U.S.C. § 922(g)(1) – felon in Possession of a Firearm, a Class A felony. (Doc. 36-1). Furthermore, on appeal of his sentence following revocation of his supervised release, the petitioner contended that the district court erred by sentencing him to a term greater than 24 months because his underlying conviction for felon in possession of a firearm is a Class C felony. In

7

> affirming the 37-month sentence for violation of his supervised parole, the United States Court of Appeals for the Ninth Circuit found that pursuant to 18 U.S.C. § 924(e), the petitioner's underlying offense was punishable by life imprisonment and was, therefore, a Class A felony. (Doc. 36-1, p.51). Accordingly, the petitioner's claims with respect to the BOP are without merit, and there is no support for any claim he may be presenting that the BOP has miscalculated his sentence and confined him past his release date.

*Id.* at 9.

The plaintiff filed no objection to Magistrate Judge Joel's Report and Recommendation and it was adopted in its entirety by the District Judge on November 25, 2009. Thus, the plaintiff's claim that the BOP has illegally changed his conviction to a Class A felony has already been conclusively decided by this Court and that issue should not be revisited in this case. Moreover, because the plaintiff has failed to show that his PSR is actually erroneous, he cannot show that the BOP's use of that document to make classification, security, housing, job placement or any other administrative decisions, has had an adverse effect on him. Thus, the plaintiff cannot establish an entitlement to collect damages under the Privacy Act and those claims should be dismissed with prejudice.

**B.　The Plaintiff's Bivens Claims[2]**

　　**1.　Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516,

---

[2]Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (authorizing suits against federal employees for violations of statutory or constitutional rights).

8

524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). However, the failure to exhaust administrative remedies is an affirmative defense that must be raised by the defendant. Jones v. Bock, 549 U.S. 199 (2007).

In Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, at 93-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. *Id.* at 103.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at USP-Hazelton, those appeals are sent to the

---

[3]*Id.*

9

Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In this case, it is clear that the plaintiff has had access to the BOP's administrative remedy process. At the time the defendants filed their motion, the plaintiff had initiated 47 administrative remedies, 14 of which were initiated in the short time the plaintiff had been housed at USP-Hazelton. Defendants' Memorandum (Dckt. No. 22) at 10. However, since his incarceration at USP-Hazelton, the only complaint the plaintiff has completely exhausted is the one related to the alleged loss of personal property upon his transfer to USP-Hazelton. Resp't Ex. 1 at Att. B. As to his Privacy Act, central file and law library claims, the plaintiff has not filed a single remedy. *Id.* The plaintiff has initiated the administrative process with regard to untimely mail delivery and obstruction of the administrative process, but he has failed to fully complete the process. *Id.* Instead, after receiving responses to his Regional Appeals, the plaintiff failed to file a Central Office appeal. *Id.* Accordingly, the plaintiff has failed to exhaust any of his <u>Bivens</u> claims and those claims are due to be dismissed for that reason.

Nonetheless, even had he properly exhausted, or if his ability to completely exhaust has been hindered by the actions of BOP staff,[4] the plaintiff's claims fail on the merits.

---

[4]It has been recognized that a prison's administrative remedies can be rendered "unavailable" for purposes of exhaustion when officials refuse to provide an inmate with required grievance forms. See <u>Dale v. Lappin</u>, 376 F.3d 652, 656 (7th Cir. 2004) (vacating a grant of summary judgment on exhaustion grounds where the defendants failed to supply any reason for the plaintiff being refused the necessary forms); <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003) (finding district court erred by not addressing plaintiffs' claims that prison officials failed to provide him with appropriate grievance forms); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001) (exhaustion requirement may

## 2. Merits of Plaintiff's Bivens Claims

    a. Consolidated Designations and Sentence Computations Center

Title 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Accordingly, by its terms, § 1983 applies only to state actors. See Gomez v. Toledo, 446 U.S. 635, 640 (1980) (a claim for relief under § 1983 may be made only against persons who acted under color of *state* law) (emphasis added). Thus, the United States Supreme Court has created a federal counterpart to § 1983, so that individuals may bring suit against federal actors for violating a right guaranteed by the United States Constitution or federal law. See Bivens, *supra*.

Like § 1983 then, Bivens claims are directed only at "persons." Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C.1989) (§ 1983 claims are directed at persons and a jail is not

---

be satisfied where prisoner raises allegations that prison officials failed to provide him with the necessary grievance forms). In this case, the plaintiff asserts that the BOP has failed to respond to his grievances in the allotted time. He also asserts that staff fails to provide inmates with the requested grievance forms, unnecessarily prolongs response times, fails to appropriately process the forms once submitted, fails to provide pertinent information as to the various appeal levels and processes submitted forms in strict accordance with the applicable regulations.

a person amenable to suit); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under §42 U.S.C. 1983"); Roach v. Burch, 825 F. Supp. 116 (N.D.W.Va. 1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983). Clearly, the BOP's Consolidated Designations and Sentence Computations Center is not a "person" for purposes of filing suit pursuant to Bivens. Thus, the CDSCC is not a proper party to this suit and should be dismissed.

b. Warden James Cross

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Thus, in order to establish liability in a Bivens case, a plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

However, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the Plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the

12

supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Id.* Nonetheless, a plaintiff cannot establish supervisory liability merely by showing that the subordinate violated his rights. *Id.* Instead, a plaintiff must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. *Id.*

In this case, the plaintiff does not allege any personal involvement on the part of defendant Cross. Rather, it appears he names defendant Cross merely in his official capacity as the Warden at USP-Hazelton. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, because remedy under Bivens is against federal officials in their individual capacities, and not the federal government, the plaintiff cannot maintain a claim against Warden Cross in his official capacity.

Additionally, the plaintiff has failed to show that defendant Cross tacitly authorized or was indifferent to the alleged violations of his constitutional rights. Thus, the plaintiff has failed to make the appropriate showing of supervisory liability. Accordingly, the plaintiff has failed to state a claim against Warden Cross and Warden Cross should be dismissed as a defendant in this action.[5]

---

[5]To the extent the plaintiff is asserting that defendant Cross may have been deliberately indifferent to his serious medical needs by denying the plaintiff's institutional grievances, that claim is without merit. This is not the type of personal involvement required to state a Bivens claim. See

c. Official Capacity Claims

The plaintiff does not specify in his complaint whether his claims are against the remaining individual federal defendants in their individual or official capacities. Nevertheless, as already noted, a suit against a government official in his or her official capacity is considered a suit against the United States. Kentucky v. Graham, 473 U.S. at 165. As a sovereign, the United States is immune from suit except to the extent that it consents to be sued. Fraham v. United States, 492 F.3d 258, 262 (4th Cir. 2007). The United States has not waived its sovereign immunity for claims arising from alleged violations of Constitutional rights. F.D.I.C. v. Meyer, 510 U.S. 471, 485-486 (1994). Thus, the plaintiff cannot maintain a Bivens claim against the remaining defendants in their official capacities.

d. Plaintiff's Constitutional Claims

In the complaint, the plaintiff makes the following constitutional claims: (1) that his legal documents were unlawfully seized, confiscated or destroyed during his transfer to USP-Hazelton; (2) he was refused access to his Central File; (3) BOP staff refused to delivery his mail in a timely manner, which prohibited his ability to respond to and meet court deadlines; (4) he was refused access to law library facilities; and (5) staff unlawfully prevented him from completing the administrative remedy process.

Destruction of Legal Documents During Transfer

As to this claim, in his complaint, the plaintiff states simply that the BOP "unlawfully seized, confiscated or destroyed [his] legal documents, materials and or articles from [his] property during

---

Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

14

transfer." Complaint at 9. However, even assuming that such a self-serving statement is true, the plaintiff cannot prevail on this claim.

Unlike claims against state actors under 42 U.S.C. § 1983, constitutional claims against individual federal employees are not statutorily authorized. Instead, those claims were created only through judicial authority. Thus, constitutional claims against federal employees in their individual capacities are subject to the limitations of judicial authority.

In <u>Carlson v. Green</u>, 446 U.S. 14 (1980), the Supreme Court found two instances in which a <u>Bivens</u> action cannot be maintained. First, when there are "special factors counseling hesitation in the absence of affirmative action by Congress." <u>Carlson</u>, 446 U.S. at 18. Second, when "Congress has provided an alternative remedy which is explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Id.* at 18-19 (emphasis in original).

Here, Congress has explicitly stated that the exclusive remedy for recovery of loss of property is against the United States. <u>See</u> 28 U.S.C. § 2679(b)(1) ("The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment *is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim* . . . ") (emphasis added). Accordingly, the plaintiff's <u>Bivens</u> claim against the individual federal defendants with respect to this matter cannot be maintained.

However, even if the plaintiff had named the appropriate defendant, and exhausted this claim,[6] he is not entitled to relief on the merits of this claim.

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme through which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. See 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953).

Despite this limited waiver, 28 U.S.C. § 2680(c) expressly preserves sovereign immunity for "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer or customs or excise or any other law enforcement officer." In a case factually similar to this one,[7] the United States Supreme Court determined that this exception preserves sovereign

---

[6]The disposition of a tort claim by a federal agency is a prerequisite to initiating suit in the district court. 28 U.S.C. § 2675. Section 2675(a) states:
> [a]n action shall not be instituted . . . against the United States for money damages for injury . . . caused by the negligent or wrongful act or omission of any employee . . . while acting within the scope of . . . employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . The failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section.

A claim is deemed presented "when a federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a).

[7]In Ali v. Fed. Bureau of Prisons, 552 U.S. 214 (2008), a federal prisoner was transferred from USP-Atlanta in Georgia, to USP-Big Sandy in Inez, Kentucky. Before being transferred, he left two duffle bags containing his personal property in the Atlanta prison's Receiving and Discharge

immunity for torts committed by all federal law enforcement officers specifically including officers employed by the Federal Bureau of Prisons. Ali v. Fed. Bureau of Prisons, 552 U.S. 214 (2008). Accordingly, this Court does not have jurisdiction to entertain this claim.

### Access to Central File, Timely Delivery of Mail and Access to Law Library

The plaintiff's claims that he was refused access to his Central File, that his mail is not being timely delivered and that he has been refused access to the law library, are refuted by the BOP's uncontested records and should be dismissed. Attached to the defendants' motion are BOP records showing that the plaintiff viewed his Central File on March 1, 2009. Resp't Ex. 1 at Att. C. In addition, the defendants have attached mail records from USP-Hazelton which show that the plaintiff's special/legal mail has been delivered to him within 24 hours of receipt in compliance with BOP policy. *Id.* at Att. E. The only break in the plaintiff's timely receipt of mail came between September 21, 2009 and October 2, 2009, when the plaintiff's mail was held while he was on suicide watch. Resp't Ex. 1 at Att. D. As soon as the plaintiff was taken off suicide watch, all of his held mail was promptly delivered. *Id.*

Finally, the uncontested Declaration of Thomas Bergami establishes that USP-Hazelton's Special Housing Unit ("SHU") has a law library accessible to inmates in the SHU upon their request. Resp't Ex. 2 at ¶ 3. The SHU maintains a computerized log of each inmate's request for time in the law library, although it does not provide an accounting of each time an inmate has actually used the law library. *Id.* at ¶ 4. According to BOP records, the plaintiff has requested law library time and accessed the law library. *Id.* Additionally, the plaintiff's access has not been restricted even though

---

Unit to be inventoried, packaged, and shipped to USP-Big Sandy. When his bags arrived, several items were missing, and he pursued a claim under the FTCA.

he has been disciplined for destroying law library property. *Id.* at ¶ 5.

## Prevented From Completing Administrative Remedy Process

The plaintiff's claim that he is being unlawfully prevented from completing the administrative remedy process has already been considered by this Court on the merits in case number 5:09cv63. On February 22, 2010, Magistrate Judge David J. Joel issued a Report and Recommendation in case number 5:09cv63 recommending that the plaintiff's claim that he is being unlawfully prevented from completing the administrative remedy process be dismissed. Magistrate Judge Joel found that the plaintiff's claim was not exhausted, but also made a finding on the merits of the claim. Specifically Magistrate Judge Joel found that the plaintiff had failed to state a claim. See Hollins v. Cross, et al., 5:09cv63 (N.D.W.Va. Feb. 22, 2010), Dckt. No. 23 at 8-9. Magistrate Judge Joel stated:

> the plaintiff alleges that the defendants "circumvented the [administrative remedy] appeals process," and thereby denied his right to due process and "his opportunity to address his concerns via the administrative remedy appeals level review and through the U.S. District Court level." (Doc. 1, p. 3). However, federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. Therefore, claims such as the plaintiff's, that conduct by BOP employees prevented him from pursuing his complaints through the administrative process, are not appropriate claims in a Bivens action. Instead, "the legal consequences of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies." Murphy v. Inmate Systems Management, Inc., et al., 2008 WL 793631 (S.D.W.Va.). Therefore, to the extent that the defendant's actions might have prevented the plaintiff from exhausting his administrative remedies with respect to his claims regarding the miscalculation of his release date, his desire to be released to a RRC, untimely mail, and the Second Chanced Act, he could have pursued those claims in this Court upon arguing that he had been prevented from exhausting administrative remedies. However, he cannot pursue a claim only alleging fault with the administrative remedy process.

> Furthermore, even if the plaintiff could pursue an action for the BOP's alleged interference with the administrative remedy process, the plaintiff has made only a bald assertion that he was deprived of his right to pursue claims in federal court. There is no doubt that prisoners must be allowed access to the courts that is "adequate, effective, and meaningful." Bounds v. Smith, 439 U.S. 817, 822 (1977)(holding that prisons must give inmates access to law libraries or direct legal assistance). However, to establish a claim for denial of such access, the plaintiff must allege both a denial of court access and some prejudice resulting from the denial of access. Lewis v. Casey, 518 U.S. 343, 351-352 (1996)(finding that a prison inmate retains a right to the courts but must allege that he suffered actual injury as a result of the defendant's actions to establish a constitutional violation).
>
> In the instant complaint, the plaintiff alleges that the defendants refusal to follow BOP grievance procedures prevented him from addressing his complaints in federal court. However, the plaintiff points to no specific case which he could not file because he had not exhausted his administrative remedies. Moreover, since his September 19, 2008 designation to USP Hazelton, the plaintiff has filed six actions in addition to the instant complaint, including a habeas corpus action alleging that his sentence had not been calculated properly, which was denied on the merits on November 25, 2009. In addition, currently pending before the court is a Bivens action challenging the computation of his sentence. None of the six actions have been dismissed for failure to exhaust administrative remedies. Accordingly, there is no support for the plaintiff's allegation that he has been denied his right of access to the courts.

*Id.* at 8-9 (footnotes omitted).

The undersigned agrees with Magistrate Judge Joel's assessment of this claim and recommends dismissal of the claim for the same reasons.

### V.    Recommendation

For the reasons stated, the undersigned recommends that the Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment (Dckt. No. 21), be **GRANTED** and the plaintiff's complaint (Dckt. No. 1) be **DENIED** and **DISMISSED with prejudice**.

Within fourteen (14) days after being served with a copy of this Opinion/Report and

Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: March 17, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE